IN THE

# SUPREME COURT

OF

# PENNSYLVANIA.

## Lancaster District. May Term, 1811.

BORNMAN *against* BOYER.

IN ERROR.

1811.

*Lancaster,*
*Saturday,*
*May 25.*

THE defendant in error was sued in the Common Pleas of *Dauphin* for slander, the declaration charging that in a conversation with a certain *Henry Reigart*, he maliciously and falsely uttered and spoke the following false, scandalous, and malicious words of and concerning the plaintiff: *I* (the defendant meaning) *have lost a calfskin out of my cellar the day that you* (the said *Henry Reigart* meaning) *and Bornman* (the plaintiff meaning) *got the leather, and there was no body in the cellar that day but you,* Bornman, *and Gray, and I do not blame you nor* Gray, *but* Bornman *must have taken it,* (thereby meaning that *Bornman* had stolen the said calfskin.). The jury found a verdict for the plaintiff, with twenty dollars damages; and upon motion, the Common Pleas arrested the judgment, upon the general ground that the words were not actionable.

*Hopkins* for the plaintiff in error. The words are equivocal, and susceptible of different meanings; but the jury have fixed their meaning in this case, by finding the *innuendo* to be true. The words themselves without any forced construc-

" I have lost a
" calfskin out
" of my cellar
" the day that
" you and *Born-*
" *man* got the
" leather, and
" there was no-
" body in the
" cellar but you,
" *Bornman* and
" *Gray;* and I
" do not *blame*
" you nor *Gray,*
" but *Bornman*
" must have
" *taken it,*" is
slander; and
without any *col-*
*loquium* of a fe-
lony, an *innuen-*
*do* that the de-
fendant thereby
meant that
*Bornman* had
*stolen* the said
calfskin, was
held good to
support a judg-
ment after a ver-
dict for plaintiff.

tion, signify a *blamable* and also a *secret* taking, and there-fore the *innuendo* that they meant a *felonious* taking, is per-fectly correct. It is the legitimate office of an *innuendo* to elucidate words by connecting them with the subject to which they refer, and to aver a meaning not inconsistent with or contradictory to them, *Shaffer* v. *Kintzer*, (a) which is the case here. The *innuendo* interprets the words as every body would understand them, and that is the rule; not a forced interpretation to screen a party from punishment, who has perhaps used ambiguous words for the purpose of doing mischief the more effectually. 6 *Bac. Abr.* 234. *Slander L. Rue* v. *Mitchell.* (b) In *Brown* v. *Lamberton*, (c) this court held that the charge of *playing* with a married woman in a fodder room, with an *innuendo* of adultery, was actionable. That case is full in point.

*Laird* for the defendant in error. An *innuendo* can nei-ther add to nor alter the natural and common signification of the words spoken; nor does the finding of the jury establish the fact that the innuendo has averred the real meaning, and that such meaning is true. If it did, then the finding of a jury would be conclusive against the defendant in all cases, where an innuendo was drawn with sufficient skill. Had there been in the present case a colloquium concerning the felony of a calfskin, that might have helped it; but the first place in which there is any thing that bears the least resem-blance to a charge of felony, is at the introduction of the innu-endo. A taking may be a trespass. Something should exist in the conversation of the parties at the time, or in the words themselves according to their common acceptation, to shew that the defendant meant a felonious taking. It should not be left to an innuendo for explanation; for nothing which would otherwise remain uncertain, can be reduced to certainty by an *innuendo*. It means the same as *aforesaid*, " *id est*," " *sci-licet*," and the like, referring to some thing that before was certain. *Craft* v. *Boite*, (d) 6 *Bac.* 249. *Slander S.* 4. In *Old-ham* v. *Peake*, (e) where the words were, " you are a bad

(a) 1 *Binn.* 537.        (c) 2 *Binn.* 34.        (e) 2 *Wm. Black.* 959.
(b) 2 *Dall.* 59.          (d) 1 *Saund.* 243. *note* 4.

" man, and I am thoroughly convinced that you are *guilty*," (meaning of the *murder* of the said *Dolly*), there was a colloquium concerning the death of one *Dolly*, between the plaintiff and defendant, and the common acceptation of the words must have been of that kind of death of which a man might be guilty, namely murder. In *Brown* v. *Lamberton* the words contained a direct assertion that a child was the fruit of that intercourse which was termed *playing*. They were parts of the same sentence, and an *innuendo* was scarcely necessary. But there being no colloquium here, and nothing in the words according to their common acceptation imputing a charge of felony, it follows that the judgment was properly arrested.

*Hopkins* in reply. The object of a colloquium is to put a new fact on the record, where the words themselves do not communicate that fact, and yet their being actionable or not depends wholly upon it; as in the case of words which are actionable only in consequence of the party's trade. But there is no necessity for a colloquium where the words themselves refer to the party's trade, *Read* v. *Holgate*, (a) nor where they contain all that is necessary to constitute slander, as they do here. A secret and blameable taking charged in the manner this was, cannot but imply felony.

TILGHMAN C. J. The error assigned in this case is, that the words laid in the declaration are not actionable. The defendant contends that he only said, that the plaintiff *took* his calfskin, and not that he *stole* it, and that the innuendo cannot alter the meaning of the words. Where words will bear several meanings, the plaintiff has a right to aver by an innuendo, the meaning with which he conceives they were spoken, and it is for the jury to decide whether he is right. It must not be supposed, that one may blast the character of his neighbour by insinuating slander, wrapped up in equivocal expressions, and then escape, under the subterfuge of not having expressly called him a thief. It appears from the whole of what the defendant said, that he charged the plaintiff with

(a) 2 *Lev.* 62.

taking his calfskin in a *secret* and *blamable* manner. There are several kinds of taking which are illegal. Taking may amount to a trespass or a felony. Taking is the *genus*, and trespass or felony the species. The jury have said that the defendant meant a *felonious* taking, and I believe that is the sense in which most people would understand the words. In *Oldham* v. *Peake*, 2 *Black. Rep.* 959., it was stated in the fifth count, that the defendant in a conversation concerning the *death* of *A*, said to the plaintiff, " you are *guilty*," (innuendo of the *murder* of *A*). This was held to be good, because the conversation was concerning the *death*, and *murder* is one kind of death. Yet manslaughter is another kind of death, of which a man may be *guilty*. That case is fully as strong as the present. I am of opinion that the declaration is good, and that the judgment of the court of Common Pleas should be reversed, and judgment entered for the plaintiff.

YEATES J. The judgment has been arrested in this action in the court below, and the only question is, whether the words as stated in the plaintiff's declaration are actionable.

The law will not permit a person to go unpunished, who slanders the reputation of another by finesse. Words of report, injurious to character by the imputation of a crime, are the foundation of a suit; as " I have heard a bird sing," or " I dreamed" that *B* stole &c., 1 *Lev.* 277. So of words spoken by way of interrogation. *Cro. Jac.* 422. 568. And even of conditional words. 3 *Bulstr.* 260., *Hob.* 180. At the same time, such vindictive suits cannot be maintained, unless the words contain an express imputation of some crime liable to punishment, and the charge upon the person spoken of be precise; or when the words may be of probable ill consequence to a person in a trade, profession or office. These are the two general rules which govern in actions of slander. 3 *Wils.* 186., 2 *Bl. Rep.* 752. The words must be taken in their plain and ordinary import without addition or diminution. And what is their natural and obvious meaning as laid? " I have lost a calfskin out of my cellar, the day that " you (*Henry Reigart*) and *Bornman* got the leather, and " there was nobody in the cellar that day but you, *Bornman* " and *Gray;* I do not blame you nor *Gray*, but *Bornman* must " have taken it."

The words convey censure unquestionably on the plaintiff; but in the language of the rule, do they convey a charge of felony? The last innuendo charges, that by *taking* was meant stolen; and it is contended, that by the jury's verdict the truth of the innuendo is found. The office of an innuendo is to explain matter sufficiently expressed before. In *Shaffer* v. *Kintzer*, 1 *Bin.* 543., this court said, " If innuendoes can " alter the meaning of words, they may be employed to very " mischievous purposes. A man may be responsible not for " what he said, but for what other persons may suppose he " intended to say." In that case the expressions were, " he has " sworn false," (meaning thereby that he had perjured himself.) But though the jury ascribed that meaning to the words, the judgment on their verdict was reversed here. The colloquium however in that case was of an extrajudicial affidavit, made before a justice of the peace. There is no such rule, as that the finding of the jury fixes the meaning of the words conclusively. On the contrary, the court is bound to determine whether the words are actionable, upon reasons filed in arrest of judgment; and where they are of opinion that they will not support an action, uniformly arrest it. In this case, it appears to me that the innuendo in the close of the declaration, does not carry the meaning of the expression *take* beyond its common and natural sense, when the words laid are fully considered. The expressions exclude all idea in the mind of the speaker, that the taking was with his consent or even knowledge; and strongly imply that the act was done secretly. This then comes up to the old legal definition of larceny, " *fraudulenta obtrectatio* " *rei alienæ, invito domino.*" And it is of weight with me, that the jury have found by their verdict, that the words were spoken *maliciously.* I would not be understood to say that this case is free from doubt; but I think my construction of the words is warranted by the case of *Oldham* v. *Peake*, 2 *Bla. Rep.* 959., and the authorities cited therein by the plaintiff's counsel.

I am of opinion that the judgment below be reversed, and that judgment be entered for the plaintiff.

BRACKENRIDGE J. concurred with the Chief Justice.

Judgment reversed.