## Thompson *against* Lusk.

In an action of slander, the words alleged to have been spoken must be stated in the declaration with legal precision, and in the sense in which they were supposed to have been uttered and understood; and in general they should be coupled, by means of a colloquium, with facts which give a particular hue to the meaning, and which, by the help of inuendoes to designate the things and persons alluded to, disclose a charge of guilt, resulting from the whole, and in a way to be intelligible to a hearer of ordinary capacity.

ERROR to *Susquehanna* county.

This was an action of slander by Franklin Lusk against William Thompson.   The declaration contained four counts; the insufficiency of which was the assignment of error by the defendant below. The material parts of the declaration were:   And whereas also before the committing of the several grievances by the said William Thompson, as in the first, second and third counts hereinafter mentioned, a certain action had been depending before Lyman Trowbridge, a justice of the peace in and for the county of Susquehanna, wherein one Jacob M'Kinney was plaintiff, and one Charles White was the defendant; and which said action had been then lately tried by and before the said Lyman Trowbridge, then and there being such justice of the peace in and for the said county of Susquehanna, and on such trial the said Franklin Lusk had been, and was examined on oath, and had given his evidence as a witness, for and on the part and behalf of the said Jacob M'Kinney, to wit, at the county aforesaid.   Yet the said William Thompson, well knowing the premises, but greatly envying the happy state and condition of the said Franklin Lusk, and contriving, and wickedly and maliciously intending to injure the said Franklin Lusk in his said good name, fame,

II.—C

[Thompson v. Lusk.]

credit and reputation, and to bring him into public scandal, infamy and disgrace, with and amongst all his neighbours, and other good and worthy citizens of this commonwealth, and to cause it to be suspected and believed by those neighbours and citizens, that he, the said Franklin Lusk, had been and was guilty of perjury, and to subject him to the pains and penalties by the laws of this commonwealth made and provided against and inflicted upon persons guilty thereof, and to vex, harass, oppress, impoverish, and wholly ruin him the said Franklin Lusk, heretofore, to wit on the 24th day of October in the year of our Lord 1832, at Susquehanna county aforesaid, in a certain discourse which he the said William Thompson then and there had with the said Franklin Lusk, of and concerning the said Franklin Lusk, and of and concerning the oath and testimony of the said Franklin Lusk in the said cause or action theretofore depending and tried before the said Lyman Trowbridge, then and there being such justice of the peace of the said county of Susquehanna, in which action the said Jacob M'Kinney was plaintiff, and the said Charles White was defendant, in the presence and hearing of divers good and worthy citizens of this commonwealth, then and there in the presence and hearing of the said last mentioned citizens, falsely and maliciously spoke to and of and concerning the said Franklin Lusk, in substance, these false, scandalous, malicious and defamatory English words following, that is to say, "you" (meaning the said Franklin Lusk) "swore false" (meaning in the said action before the said Lyman Trowbridge, in which the said Jacob M'Kinney was plaintiff and the said Charles White was defendant) "and are amenable to the laws for it" (meaning that he the said Franklin Lusk had committed perjury before the said Lyman Trowbridge in the said action, wherein he had been sworn and gave evidence as a witness, and was liable to conviction and punishment by the laws of this commonwealth for perjury).

And whereas also, afterwards, to wit on the 24th day of October in the year of our Lord 1832, at Susquehanna county aforesaid, in a certain other discourse which the said William Thompson then and there had with the said Franklin Lusk in the presence and hearing of divers good citizens of this commonwealth, he the said William Thompson, further contriving and intending as aforesaid, then and there, in the presence and hearing of the said last mentioned citizens, falsely and maliciously spoke and published, to and of and concerning the said Franklin Lusk, and of and concerning the said oath and testimony of the said Franklin Lusk taken in the said action in the foregoing count mentioned, these other false, scandalous, malicious and defamatory English words following, that is to say, in substance, "you" (meaning the said Franklin Lusk) "yesterday swore positively" (meaning in the action in the first count mentioned) "that M'Kinney" (Samuel M'Kinney, meaning) "had done all in his power to collect a note, when you" (meaning the said Franklin Lusk) "knew that M'Kinney" (meaning Samuel M'Kinney) "had

connived to keep a material witness away from court" (meaning a material witness in the action in the first count mentioned), he the said William Thompson then and there meaning and intending that the said Franklin Lusk, in his oath and testimony as a witness in the said action and trial in the said first count mentioned, had sworn and testified positively to what he the said Franklin Lusk then and there knew to be materially false, and was guilty of perjury.

And afterwards, to wit on the day and year last aforesaid, at the county aforesaid, in a certain other discourse which he, the said William Thompson, then and there had with the said Franklin Lusk, and in the presence and hearing of divers other good citizens of this commonwealth, of and concerning the said action before Lyman Trowbridge, being such justice of the peace in and for said county of Susquehanna, wherein said Jacob M'Kinney was plaintiff, and the said Charles White was defendant, in which action the said Franklin Lusk was sworn and examined as a witness on the part and behalf of the said plaintiff, and of and concerning the oath and testimony of the said Franklin Lusk in the aforesaid action in the first and second counts mentioned, he the said William Thompson further contriving and intending as aforesaid, then and there, in the presence and hearing of the said last mentioned citizens of this commonwealth, falsely and maliciously spoke and published to, of and concerning the said Franklin Lusk, and of and concerning his said oath and testimony as a witness in the said action in the said preceding counts mentioned, these other false, scandalous, malicious and defamatory English words, in substance following, that is to say, "you" (meaning the said Franklin Lusk) "swore false," (meaning that the said Franklin Lusk had sworn falsely and perjured himself in the said last mentioned action before Lyman Trowbridge) "and I" (the said William Thompson meaning) "do not fear your action" (meaning and intending that the said Franklin Lusk was guilty of perjury; and that if he, the said Franklin Lusk, should thereafter sue for the supposed slander, that he, the said William Thompson would prove him, the said Franklin Lusk, guilty of perjury).

And afterwards, to wit on the day and year last aforesaid, at the county aforesaid, in a certain other discourse which the said William Thompson then and there had with divers good and worthy citizens of this commonwealth, *of and concerning the said Franklin Lusk, and of and concerning his oath and evidence in the trial of the said cause, in the first count mentioned, as a witness, he,* the said William Thompson, further contriving and intending as aforesaid, then and there, in the presence and hearing of the said last mentioned citizens, falsely and maliciously spoke and published of and concerning the said Franklin Lusk, and of and concerning his oath and evidence as a witness in the action in the said first count mentioned, these other false, scandalous, malicious and defamatory words, in substance following, that is to say, "I" (the said William Thompson himself

meaning) "have made the charge against him" (meaning the charge of perjury), "and I" (the said William Thompson himself meaning) "shall go on with it" (meaning and intending that the said Franklin Lusk was guilty of perjury, and that the said William Thompson had charged the crime of perjury upon the said Franklin Lusk, and that he, the said William Thompson would not retract it).

By means of the committing of which said several grievances by the said William Thompson as aforesaid, he, the said Franklin Lusk hath been·and is greatly prejudiced and· injured in his said good name, fame, credit and reputation, and brought into public scandal, infamy and disgrace, with and amongst all his neighbours and other good and worthy citizens of this commonwealth, insomuch that divers of those neighbours and citizens to whom the innocence and integrity of the said Franklin Lusk in the premises were unknown, have, on occasion of the committing of the said grievances by the said William Thompson as aforesaid, from thence hitherto suspected and believed, and still do suspect and believe the said Franklin Lusk to have been and to be a person guilty of perjury, and have, by rea-son of the committing of the said grievances by the said William Thompson as aforesaid, from thence hitherto wholly refused, and still do refuse, to have any transaction, acquaintance or discourse with him the said Franklin Lusk, as they were before used and accustomed to have and otherwise would have had; and the said Frank-lin Lusk hath been and is by means of the premises otherwise greatly injured, to wit, at the county aforesaid, to the damage of the said Franklin Lusk, as he says, 5000 dollars, and therefore he brings his suit, &c.

The jury found a verdict for the plaintiff for 900 dollars damages; upon which a judgment was rendered.

*Conyngham* and *Williston*, for plaintiff in error, cited, 1 *Chitty's Pl.* 383, 394; 2 *Chitty's Pl.* 229, *note w;* 2 *Saund. Pl. and Ev.* 370, 799; 4 *Bac. Ab. Slander* 3, 4; 2 *Starkie's Ev.* 61; 5 *Binn.* 218; 11 *Serg. & Rawle* 343.

*Collins*, for defendant in error, cited, 2 *W. Black* 960; 2 *Dall.* 58; 3 *Binn.* 514; 3 *Serg. & Rawle* 255; 2 *Binn.* 34, 60.

The opinion of the Court was delivered by

GIBSON, C. J.—Where the accusation has not been made bluntly, but has been insinuated, as it sometimes is, in a way to make it actionable, it is frequently a nice thing to determine whether the attendant circumstances are sufficiently stated to indicate, with legal precision, the sense in which the words are supposed to have been spoken and understood. The latter must in general be coupled, by means of a colloquium, with facts which give a particular hue to the meaning, and which, by the help of inuendoes, to designate the things and persons alluded to, disclose a charge of guilt, resulting

[Thompson v. Lusk.]

from the whole, and in a way to be intelligible to a hearer of ordinary capacity. It is impossible to explain distinctly what is meant by this, without recourse to instances of its application; the best of which, it seems to me, is found in Oldham *v.* Peake, 2 *Black. Rep.* 952, in which the words " you are *guilty* of the death of A." averred to have been uttered in a colloquium of the death of one supposed to have been slain, were held to sustain an inuendo of felonious homicide, because guilt could be contracted from no other species of it. Perhaps the colloquium was unnecessary; the matter which determined the meaning of the word "guilty" being contained in the words which accompanied it. In Rue *v.* Mitchel, 2 *Dall.* 58, the court went further, by sustaining the assignment of a particular meaning in the inuendo, though the explanatory matter was neither set forth in a colloquium nor contained in the words themselves. As the law then stood, the decision must be admitted to have been a questionable one. " You have taken a false oath before squire Rush," are words which may undoubtedly have been *spoken* by one who knew the circumstances, in the sense attributed to them in the inuendo, to wit that the plaintiff had committed perjury in an oath taken by him before a justice of the peace *in an action before him depending;* but were they alleged to have been spoken in reference to circumstances known to the by-standers, which showed that they were *understood* in that sense by the hearers? These are not presumed to have known that the violation of a judicial oath was intended, unless they also knew that the plaintiff had testified in a judicial proceeding. The court proceeded on the same principle in Bornman *v.* Bayer, 3 *Binn.* 515, where the meaning was held to be well alleged by an inuendo, without a colloquium; on the ground, that where words admit of a double meaning, the plaintiff has a right to aver the one with which he conceives they were spoken. But without having set forth circumstances to give colour to the averment, has he a right to assume a particular meaning by adopting an arbitrary interpretation? It is said that an inuendo can not add to the effect of the words, nor aver a meaning inconsistent with them; and it is for this reason that a colloquium is necessary to show that the additional or particular meaning imputed by the inuendo, is legitimately indicated by concomitant circumstances. Though a jury may judge of the meaning by extrinsic evidence of such circumstances, the court can judge of it on a motion in arrest of judgment only by the record, and consequently only according to the natural import of the words, stripped of every thing that is not there set out. By this I would not have it inferred that I disapprove of these decisions. On the contrary, I would prefer to relax still further the strictness of averment formerly required, rather than to shake their authority. Had the courts received, under the sanction of a verdict, the meaning imputed by the inuendo as the true one, without attempting to discover from the record whether the premises were sufficient to warrant the conclusion of the jury,

[Thompson v. Lusk.]

they would have saved a vast deal of subtlety, which has not only occasioned useless disputation, but served to render the attainment of justice more difficult; for facts and circumstances which collectively fix the meaning of an ambiguous phrase with perfect certainty before a jury, are frequently so numerous, complicated, minute and evanescent, as to be incapable of being represented on the record. Their nature and effect may be explained to a jury, by the simple narrative of their impression on the mind of the witnesses; while they may be incapable of being described to the court by the ablest special pleader. In Bornman v. Bayer, there may have been no actual colloquium; and yet the imputation of theft may have been so clearly indicated by the tone and manner of the speaker, as to leave no doubt on the mind of the hearer, as to the meaning of the words " Bornman must have *taken* it." But the sufferer would have been remediless, could the words have been shown to be actionable in no other way than by a successful attempt to set forth the tone and manner in the declaration; for if the plaintiff had laid a colloquium, he would have been bound to prove it. However this may be; I am certainly not disposed to question the authority of the two decisions alluded to, which come up to, if they do not go beyond, the exigences of the present case. The colloquium relates to testimony given by the plaintiff in a cause depending; in reference to which the defendant is alleged to have said, " I have made the CHARGE against him, and I will go on with it." A charge imports an accusation of criminality; and when made against a party in relation to " his oath and evidence in the trial of a cause," imports an accusation of the only species of criminality which could have been incurred by him in the character of a witness. Why should the defendant express a determination to " go on with it," if it were any thing else than the subject of a prosecution? It is in vain to say, that nothing more may have been imputed than a repugnance to tell the truth, or any other species of delinquency which happens to fall short of actual perjury. Such an interpretation could be adopted only by a recurrence to the doctrine of *mitiori sensu*, which has been long exploded. No bystander could doubt for an instant what was meant; and as certainty to a common intent is all that is required in pleading, it is clear, even on the principle of Oldham v. Peake, that the words are actionable as they are laid.

Judgment affirmed.