## Stitzell *versus* Reynolds and Wife.

1. " E. had her hogs in his corn and carried corn away," standing by themselves impute at most a mere trespass.

2. To show that they meant to impute larceny, there must be a reference to extrinsic circumstances which must be spread upon the record by proper averments with a colloquium.

3. An innuendo cannot add to, enlarge, extend or change the sense of the

[Stitzell v. Reynolds.]

previous words and the matter to which they refer must always appear from the antecedent parts of the declaration.

4. An innuendo cannot supply the place of a colloquium.

5. Where the words may be taken in a double sense, the innuendo is to attach such meaning to them as the plaintiff claims was intended, or he may think necessary to render them actionable.

6. When the words in their popular sense impute a criminal charge, an innuendo is all that is necessary to fix the meaning.

7. When there is a general verdict on a declaration one of whose counts is vicious, it is error.

November 16th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1868, No. 41.

This was an action of slander, by Patrick Reynolds and Elizabeth his wife against Frederick Stitzell, commenced August 23d 1866.

The declaration contained four counts. The 1st charged that the defendant uttered the following defamatory words, to wit:—

"That he (the said Frederick Stitzell meaning) understood that Elizabeth Reynolds, the plaintiff meaning, had her hogs in his (the said George Dawson's meaning) corn, and that she (the said Elizabeth Reynolds meaning) had carried away corn, thereby meaning and intending the said Elizabeth Reynolds to have been guilty of larceny."

The 2d and 3d counts alleged that the defendant had charged Elizabeth Reynolds with stealing corn; the 4th count alleged that the plaintiff had said that Elizabeth Reynolds had been in Dawson's field "with her apron full of corn, thereby meaning that (she) was guilty of a malicious trespass." The declaration had no *colloquium.* The plaintiff having given evidence in support of all the counts, the jury found a verdict for $320. The defendant moved in arrest of judgment for the reason that the damages assessed by the jury were entire, and the words in the 1st and 4th counts were not actionable.

The court (Gilmore, P. J.) entered judgment on the first three counts, having told the jury that the words as laid in the last count were not actionable.

The defendant took out a writ of error, and assigned the entering of the judgment for error.

*C. E. Boyle,* for plaintiff in error, cited Shaffer v. Kintzer, 1 Binn. 540; Lukeheart v. Byerly, 3 P. F. Smith 418; Tipton v. Kahle, 3 Watts 93; Packer v. Spangler, 2 Binn. 60; Gosling v. Morgan, 8 Casey 273; Ruth v. Kutz, 1 Watts 489; Kennedy v. Lowry, 1 Binn. 397.

*W. H. Playford, A. E. Wilson* and *D. Kaine,* for defendants

[Stitzell *v.* Reynolds.]

in error, cited Evans *v.* Tibbins, 2 Grant 451; Dottarer *v.* Bushey,
4 Harris 209; 2 Saunders on Evidence 900, 903; Bornman *v.*
Boyer, 3 Binn. 517; Hays *v.* Brierly, 4 Watts 392; Thompson
*v.* Lusk, 2 Watts 17; Vanderslip *v.* Roe, 11 Harris 84; McKennon *v.* Greer, 2 Watts 353.

The opinion of the court was delivered, January 5th 1869, by
SHARSWOOD, J.—The words set out in the first count of the
declaration impute no indictable offence of themselves, and without special damage, are therefore not actionable. Words, indeed,
are no longer construed *in mitiori sensu*, but if in their plain
popular meaning they convey a criminal charge, it is now sufficient. "Elizabeth Reynolds had her hogs in your corn and carried corn away," impute in their worst sense, standing by themselves, a mere trespass. To show that they meant to impute
larceny, there must be a reference to some extrinsic circumstances,
and these extrinsic circumstances must be spread on the record
by proper averments,.with a colloquium. "A word," said Gibson, C. J., in Deford *v.* Miller, 3 Penna. Rep. 105, "which does
not necessarily import criminality is in pleading rendered actionable only by reference to extrinsic facts which show it to have
been used in an obnoxious sense; thus the word "forsworn,"
becomes actionable when shown to have been predicated of one
who had given testimony under the sanction of a judicial oath;
and hence the necessity of a colloquium about the time, place and
circumstances."

Perhaps the best illustration of the rule of pleading in these
cases is to be found in Barham's Case, 4 Rep..20. The words,
as laid, were, "Barham burnt my barn" (innuendo), a barn with
corn. The action was held not to lie; because burning a barn,
unless it had corn in it, was not felony; but, remarked De Gray,
C. J., on this case in Rex *v.* Horne, Cowp. 684, "if, in the introduction, it had been averred that the defendant had a barn full
of corn, and that in a discussion about that barn, the defendant
had spoken the words charged, an innuendo of its being the barn
full of corn, would have been good." Here the extrinsic fact
that the defendant had a barn full of corn is the averment. The
allegation that the words were uttered in a conversation in reference to that barn is the colloquium, and the explanation given to
the words thus spoken is the innuendo: Van Vechten *v.* Hopkins,
5 Johns. 221.

"Nothing can be more clear," said Lord Ellenborough in
Hawkes *v.* Hawkey, 8 East 431, "than the rule laid down in the
books, and that which has been constantly adopted in practice, not
only when the words spoken do not in themselves naturally convey the meaning imputed by the innuendo, but also where they
are ambiguous and equivocal, and require explanation by refer-

[Stitzell *v.* Reynolds.]

ence to some extrinsic matter to make them actionable; it must not only be predicated that such matter existed, but also that the words were spoken of and concerning that matter." An innuendo, as has been often decided, cannot add to or enlarge, extend or change the sense of the previous words, and the matter to which it refers must always appear from the antecedent parts of the declaration: Thomas *v.* Croswell, 7 Johns. 271. It cannot supply the place of a colloquium: Lindsey *v.* Smith, 7 Johns. 359. "It would not be easy," says Mr. Starkie, "or perhaps possible to point out a more clear and convenient process for technically stating a case upon the record than this, which has with great wisdom been adopted by the law from very early times; it combines simplicity with precision, separating the law from the facts, and exhibiting a statement of the cause of action on the face of the record, plain and distinct in all its parts:" 1 Starkie on Slander 431.

The decisions of this court have heretofore been entirely in accord with these principles: Shultz *v.* Chambers, 8 Watts 300; Thompson *v.* Lusk, 2 Watts 17. Where the words themselves may be taken in a double sense, the innuendo is used in order to attach such meaning to them as the plaintiff claims was intended, or may think necessary to render the same actionable. But whenever in such case the actionable quality of the words arises from circumstances extrinsic of them, averments are essential to show of record that such circumstances existed, and connect the words used with these circumstances: Gosling *v.* Morgan, 8 Casey 273; and in Lukeheart *v.* Byerly, 3 P. F. Smith 418, it was expressly decided that words laid in a count for slander, which are not actionable in themselves and have no colloquium to connect them with extrinsic circumstances, are not helped by the innuendo of larceny.

The only difficulty has been in applying the rule in determining when the words used do, in their popular sense, convey the imputation of a criminal charge, either singly or in one of two senses; for then an innuendo is all that is necessary to fix the meaning, or if not absolutely necessary, may nevertheless be used without danger. Thus in Bornman *v.* Boyer, 3 Binn. 515, it appeared from the whole of what the defendant had said, that he charged the plaintiff not simply with taking his calf-skin, but with taking it in a secret and blameable manner. In McKennon *v.* Greer, 2 Watts 352, the accusation of taking the straw was accompanied with other words "expressive of blame for a taking, accompanied with concealment." In Beirer *v.* Bushfield, 1 Watts 23, the words were held actionable in themselves, and though the innuendo altered the meaning of the charge from fornication to adultery without any colloquium, and it was agreed that this could not be done; yet it was decided to be altogether unnecessary,

that it was surplusage and might therefore be stricken out or disregarded.

In Bricker *v.* Potts, 2 Jones 200, it was held that words which in their ordinary import imply a false oath in a judicial proceeding are actionable, although in fact there was no such proceeding, and therefore no colloquium is necessary: Dottarer *v.* Bushey, 4 Harris 204, belongs to the same class. "If the words charged in a *narr.* for slander do not imply a criminal charge subject to infamous punishment, neither an innuendo nor a verdict will help them:" Vanderlip *v.* Roe, 11 Harris 82. If the slanderous words alleged to have been spoken contain a charge of fornication, no colloquium is necessary. "If the words laid do not of themselves involve the charge, or express the meaning repeated in the innuendo, then the colloquium is the place to insert the other facts, which give the color to the words laid, and without it there would be no cause of action." On the same principle Evans *v.* Tibbins, 2 Grant 451, was determined. The words were, "Augustus caught them (a man and woman) together in the packing-room." "In the mere fact of being in the packing-room with a man there might be nothing wrong, but the words 'caught together in the packing-room' were as capable of conveying to the minds of the listeners a charge of fornication against the plaintiff as any form of words that could have been chosen:" Woodward, C. J.

These are all our decisions that I have found bearing on this question; and I think it will be admitted that they have steered skilfully and successfully through these narrows of pleading. Now, in the words as laid in the 1st count of the declaration before us there was no fault or blame or concealment alleged—merely carrying away—without even the ingredient *invito domino*. In the popular sense, and certainly in the legal sense, there was nothing imputed by the words themselves but a trespass, if even that.

It follows that the 1st count of the declaration was bad, and as the judgment was entered generally on the first three counts, it must be reversed; for it is well settled that when a general verdict is rendered on a declaration, one of the counts of which is vicious, it is error: Ruth *v.* Kutz, 1 Watts 489. But as decided in that case, a *venire de novo* should be issued in order that the proper amendment may be made in the court below, or the cause be re-tried on the good counts alone.

Judgment reversed, and a *venire facias de novo* awarded.