## Harker *against* Orr.

When there are several counts in a declaration in slander, some of which are good and some bad, and the verdict is taken generally, the judgment will be reversed, though it was entered on particular counts supposed to be good.

Additional counts, appearing by the minutes to have been filed after verdict recorded, *held*, nevertheless, to be a part of the declaration, on the ground that the date of such filing is not strictly part of the record, and consequently that it is insufficient to subvert the principle that the term is, in contemplation of law, but a single day.

ERROR to the district court of *Allegheny* county.

David Orr and Eleanor his wife against Ezekiel Harker. This was an action of slander, in which the jury rendered a general verdict for the plaintiffs, on the 4th November 1839, for 210 dollars. The declaration was as follows:—

Allegheny county, ss.—Of June term 1837, No. 130. Ezekiel Harker, late of the said county, yeoman, was summoned to answer David Orr and Eleanor his wife, of a plea of trespass on the case, &c.; and whereupon the said David Orr and Eleanor his wife, complain, that whereas, she, the said Eleanor, is a good, true, honest, chaste and faithful woman, and as such, from the time of her nativity, hitherto hath behaved and carried herself, and during all that time hath been held and esteemed and reputed of good name, fame and behaviour and character, and free from all kind of adultery and fornication, and from all suspicion of committing such crimes, by means whereof, the said Eleanor, the love and affection of her said husband, and the favour, good will and esteem of her neighbours and others, to whom she was known, deservedly did acquire and gain. Nevertheless, the said Ezekiel Harker, not being ignorant of the premises, but contriving and maliciously intending, the said Eleanor, not only of her good name and credit to deprive, but also the same Eleanor infamous and scandalous among her neighbours aforesaid to render, and the matrimonial concord

[Harker v. Orr.]

and love which subsisted between the said Eleanor and her husband aforesaid to interrupt and destroy, and also the said Eleanor into dangers of the penalties of the laws against such offender, made to induce and bring, the 1st day of March in the year of our Lord 1837, at Allegheny county aforesaid, these false, feigned and scandalous English words, of and concerning the said Eleanor, in the presence and hearing of divers good people of this commonwealth, maliciously and unjustly did speak, proclaim and publish, to wit: "You know there are some women that will not be satisfied with one man;" thereby insinuating and meaning the said Eleanor was in the habit of committing and was guilty of the crime of adultery; and of his further malice, did, then and there, in the presence of divers good people, falsely and maliciously publish and declare, of and concerning the said Eleanor, the following English words, to wit: "You know there are many women that cannot be satisfied with one man;" thereby insinuating and meaning the said Eleanor was in the habit of committing and was guilty of the crime of adultery. And the said David Orr and Eleanor his wife, further in fact say, that afterwards, to wit, on the 10th day of March in the year of our Lord 1837, at the said county, in a certain other discourse which the said Ezekiel had with divers other good and worthy citizens of this commonwealth, of and concerning the said Eleanor, with malicious contrivance and intention aforesaid, and for the purposes aforesaid, did falsely and maliciously, openly and publicly declare, "that she," meaning the said Eleanor, "was a wanton, and went gadding about with young men to night meetings, and that Frew's boys were watching by the way for her." And of his further malice, he, the said defendant, on the 15th day of March in the year of our Lord 1837, at the said county, in the presence and hearing of divers good people, did pronounce, utter and publish, of and concerning the said Eleanor, the following false and scandalous English words, to wit: "the greatest strumpet that walks the street of Pittsburgh, was more decent than her," meaning the said Eleanor. And the plaintiffs in fact further say, that afterwards, viz. on the 21st day of March in the year of our Lord 1837, at the county aforesaid, in a certain other discourse, which the said Ezekiel Harker had with divers other good citizens of this commonwealth, then and there, of and concerning the said Eleanor, with the malicious contrivance and intention aforesaid, and for the several purposes aforesaid, did falsely and maliciously, openly and publicly, charge the said Eleanor with the crime of adultery, in the presence and hearing of these last mentioned citizens. By means of the speaking and publishing of which said several false, and scandalous, and defamatory words, and of the said false and malicious charges, the said Eleanor, not only in her good name and fame aforesaid, is grievously injured, but also the said David Orr, and the said Eleanor, in performing divers their lawful business is much worse; to the damage of the said David and Eleanor 5000 dollars, and therefore they bring their suit, &c.

[Harker v. Orr.]

On the 5th November 1839, the plaintiffs, by leave of the court, filed the following additional counts:—

And the said David Orr and Eleanor his wife further say, that the said Ezekiel Harker further contriving and intending as aforesaid, afterwards, to wit, on the 1st day of April in the year of our Lord 1837, at the said county of Allegheny, in a certain discourse, then and there had, of and concerning the said Eleanor, in the presence and hearing of the said last mentioned citizens, falsely and maliciously spoke and published, of and concerning the said Eleanor, " that she," meaning the said Eleanor, " was a wanton, and went gadding about with young men to night meetings, and Frew's boys were watching by the way for her;" meaning thereby that she, the said Eleanor, was then and there a common prostitute, and guilty of lewd practices, and of the crime of adultery, and did go to night meetings for the purpose of committing adultery, and did then and there, at such meetings, commit the crime of adultery.

And the said plaintiffs further say, that the said defendant further contriving and intending as aforesaid, afterwards, to wit, on the 1st day of April in the year of our Lord 1837, at the said county of Allegheny, in a certain discourse then and there had, of and concerning the said Eleanor, in the presence and hearing of divers good and worthy citizens of the commonwealth, then and there, in the presence and hearing of the said last mentioned citizens, falsely and maliciously spoke and published, of and concerning the said Eleanor, " that the greatest strumpet that walks the streets of Pittsburgh, was as decent as her," thereby meaning that the said Eleanor had then and there prostituted her person to lewdness, was a common public prostitute, and been guilty of the crime of adultery. By means of the speaking and publishing of which said several false and scandalous and defamatory words, in these two counts mentioned, the said Eleanor not only in her good name and fame aforesaid is grievously injured, but also the said David Orr and the said Eleanor, in performing divers their lawful business are much worse; to the damage of said David and Eleanor 5000 dollars, and therefore they bring suit, &c.

On the 27th November 1839, the court entered a judgment on the first and second counts of the declaration and on the first of the additional counts.

Errors assigned:

1. That there is no cause of action set forth in the declaration.

2. That some of the counts are defective and the verdict is general and the damages assessed are entire.

3. That the judgment is on particular counts and the verdict was general.

*Dunlop*, for plaintiff in error, cited 1 *Chit. Pl.* 381, 397; 2 *Watts* 17; *Stark. on Slan.* 289, 302; 2 *Chit. Pl.* 308, *note;* 12 *Serg. & Rawle* 247; 2 *Hen. Black.* 131; 3 *Salk.* 175; 4 *Watts* 56.

[Harker v. Orr.]

*Williamson,* for defendant in error, cited 4 *Watts* 393; 7 *Serg. & Rawle* 449; 1 *Watts* 489; 12 *Wend.* 135; 2 *Binn.* 37; 2 *Watts* 353; *Ibid* 21.

Per Curiam.—Several of these counts are defective. The one in which no particular words are laid, is grossly so—and, as the verdict was taken generally, the judgment must be reversed, though it was entered on particular counts, supposed to be good. The verdict rests upon the declaration: the judgment on the verdict, and consequently as it was found. Who can say that a part of the damages was not assessed on the defective counts? It is the business of the jury to dispose of the whole case; and the presumption from a general verdict is, that it has been disposed of in favour of the successful party. The jury then may get round a defective count, but the court can not. To find on the bad counts, and give judgment on the good, would be a juggle by which the defendant might be made answerable for innocent words. In this instance, therefore, the judgment must be reversed; and what remains for us to determine is, whether there is any good count in the declaration to found an order for a *venire de novo.* As it was originally filed, it contained words which, if coupled with a proper averment, would undoubtedly be actionable. For to call a woman a wanton, and to say she went gadding about with young men to night-meetings; that they were watching by the way for her, is too plain an imputation of sexual indulgence to be misunderstood. What is wanting to fix it with precision, is an averment of the particular meaning, by innuendo or otherwise, and that has been supplied in one of the additional counts. The charge averred to have been made, is indeed not fornication, but adultery—and there is no averment that the plaintiff was married. But is not the fact to be intended, after a verdict which could not have been legitimately found, without proof of it? The cause of action has been defectively stated, but it is nevertheless a cause of action. But it is urged, that the additional counts are no part of the declaration, because it appears by the dates on the minutes that they were filed when the verdict had been recorded. These dates, however, are not strictly part of the record, and they are consequently insufficient to subvert the common law principle, that the term is, in contemplation of law, but a single day: to which the true date of a judgment is made an exception only by the power of a statute. The 29 *Car.* 2, in England, and the act of 1772 here, and the true time of issuing a writ, is also an exception by force of necessity, as was held in Hargreaves' Assignees *v.* Smith, 2 *Burr.* 950. But though a particular count might stand the test of a writ of error, it will probably be thought prudent to remodel the whole declaration, and it is unnecessary to look further into the matter here.

Judgment reversed, and *a venire de novo* awarded.