## Vanderlip and Wife *versus* Roe.

1. If the slanderous words alleged contain a charge of fornication, no colloquium is necessary to be averred.
2. The charge of fornication involved in the words "she is a loose character, a bad character," may be sufficiently averred by an innuendo without a colloquium.    Such words involve the charge of fornication.

Error to the Common Pleas of *Susquehanna county*.

This was an action on the case brought in June, 1851, in the name of Elsey E. Dailey, by her father, H. Dailey, *v.* Daniel J. Roe, for words spoken of the plaintiff.    Subsequently, before trial, Guy Vanderlip, who had intermarried with her, was added as a plaintiff.

In the declaration, it was averred that the defendant, intending to injure the plaintiff in her good name, &c., and to cause it to be believed that she had been guilty of fornication, in a discourse which the defendant had of and concerning the plaintiff, in the presence and hearing of one Robert Gillespie and of others, spoke and published concerning the said plaintiff, the false, scandalous, malicious, and defamatory words following; that is to say, "Do you," addressing himself to (Gillespie), "know that Elsey," meaning the said plaintiff, "is a loose character?"    To which the said Robert Gillespie replied, "No, I haven't heard of it before; what do you," meaning the defendant, "mean by a loose character, a bad cha-

[Vanderlip and Wife v. Roe.]

racter?"   To which the said defendant, Daniel T. Roe, answered, "Yes, a bad character; it is a common talk around town;" meaning thereby that the said Elsey E. Dailey was a person of a bad and infamous character, and that she had been guilty of fornication and infamous conduct.

January 20, 1853, verdict was rendered for the plaintiffs.

Reasons in arrest of judgment were filed. They were,—1. The words set forth in the declaration are not actionable.   2. There is no *colloquium* which connects the words with the subject-matter as contained in the innuendo.   3. The *innuendo* is not properly deducible from the words as laid.

The judgment was arrested, and this was assigned for error.

*Little,* for plaintiff in error.—The words are actionable, because they impute in direct terms to an unmarried female such a character as to degrade her.   It appears to be the contumely, and not the peril, which gives the action: 2 *M. & R.* 119; *Cooke on Defamation* 9; 5 *Barr* 372.   The words, "you have done an act for which I could transport you," are slanderous, and neither colloquium or innuendo are necessary. 4 *M. & Scott* 337; 10 *Bing.* 447.   The slander need not be charged in direct and positive terms.   2 *Wend.* 534; 3 *Id.* 391; 4 *Id.* 320.   They are to be taken in their natural meaning, the old doctrine of "*mitior sensus*" is exploded: *Cooke on Defamation* 13; 13 *Mass.* 248; 2 *Pick.* 320.   The declaration in this case charges that the words were designed to convey an imputation of infamous conduct and of crime, and, after verdict, they are to be construed in a sense which will support the verdict: *Cooke on Defamation* 13.

It is only when words, *per se,* do not import criminality or contumely, that a colloquium is necessary: 3 *Penna. Rep.* 103, Deford v. Miller; 2 *Watts* 353, McKennon v. Greer.

Certainty to a common intent is all that is necessary in pleading.

*Jessup,* for defendant.—The words must be such as can be understood only in a criminal sense, or it must be shown in the introductory part, by a colloquium, that they have that meaning, otherwise they are not actionable: 3 *Wilson* 186; 6 *Term Rep.* 694; 3 *Bos. & Pul.* 372; 1 *Binney* 542; 5 *Id.* 219; 5 *Johns.* 190.   It was contended that the words in question did not contain an imputation of any crime liable to punishment, and that they were not such as could be understood only in a criminal sense.

2 and 3. There was no colloquium to connect the subject-matter with the words as contained in the innuendo.   An innuendo cannot add to or extend the effect of words, nor aver a meaning inconsistent with them.   It is an averment which explains the meaning of the words used by reference to facts before ascertained by aver-

[Vanderlip and Wife *v.* Roe.]

ment or otherwise: *Cooke on Def.* 64. It can only connect the words with some matter on the record: 2 *Cowp.* 683; 1 *Bin.* 543; 2 *Bing.* 119; 5 *Bin.* 220; 3 *Watts* 93; and therefore a *colloquium* is necessary to show that a particular meaning imputed by the innuendo is legitimately indicated by the attendant circumstances; and the circumstances should be stated: 3 *Penna. Rep.* 105–6; 2 *Cowp.* 345; 2 *Pick.* 328; 12 *Mass.* 500; 5 *B. & Ad.* 144.

Where words are defectively laid, a verdict does not cure the defect: 1 *Cowp.* 278.

The opinion of the Court was delivered by

LOWRIE, J.—That the charge of fornication involved in the words "she is a bad character, a loose character," may be sufficiently averred by an *innuendo* without a *colloquium*, is certainly proved by the opinion of Chief Justice GIBSON in Thompson *v.* Lush, 2 *Watts* 20; McKennon *v.* Greer, *Id.* 353; and Hays *v.* Brierly, 4 *Watts* 393. If no other words were used, then there could be no subject-matter for the colloquium; and then there could be no action, if the colloquium is essential. If other words were used, showing a different intention, the defendant could prove them, and thus contradict the innuendo, by supplying the colloquium. If we have the whole conversation, or if the part of it which is given contains the charge of fornication, we need no col-loquium. If the words laid do not of themselves involve the charge or express the meaning repeated in the innuendo, then the colloquium is the place to insert the other facts which give the color to the words laid, and without it there would be no cause of action.

It is said that these words do not expressly charge fornication, and here lurks the whole error of the Court below. This is, in fact, a return to the old doctrine of *mitior sensus.* They do charge it expressly or not at all, unless we falsify their meaning by treating them too kindly. Such words are always understood as an assault upon the bright central virtue of a woman's character, and it is almost always made in a covert way—such is the *norma loquendi.* There is some natural and instinctive decency still left, even in the most degraded characters, that prevents them from speaking of this offence in the most direct terms; and yet not decency enough to suggest to them the common language of the people. Their euphemisms consist of slang phrases and strange metaphors, which we are often compelled to hear in the course of judicial investigations, and which we dare not write even for the sake of illustration. What use could be made of a colloquium as applied to most of such cases? Low slanderers have a *norma loquendi* that is peculiar to the class, and the meaning of such expressions may be properly averred in the innuendo, and the jury must decide whether the averment is true.

Judgment for the plaintiffs on the verdict.