# Catharine Evans *versus* Tibbins et uxor.

1. The defendant having put in a general demurrer to the plaintiff's *narr.*, which consists of several counts, the plaintiff is entitled to judgment, if any one of them is sufficient in law to support the action, even though some be defective.

2. The words, charging that the plaintiff and one J. T. V. were caught together in the packing-room, no special damage being charged, are not actionable.

3. The words, laid in the declaration, that plaintiff and one J. T. V., were "caught together" in the packing-room, with an *innuendo* of fornication, are actionable.

4. The office of an *innuendo* in pleading, is to explain matter already expressed, words doubtful, or double in their meaning, or which do not of themselves show the slander intended.

CERTIFICATE from the Court of Nisi Prius.

The opinion of the court was delivered by

WOODWARD, J.—The action is for words, and the defendants have put in a general demurrer to the plaintiff's *narr.*, which consists of several counts. If some counts are defective, the plaintiff will still be entitled to judgment, if any of them are sufficient in law to support the action. 1 Saunders, 286.

The words, as laid in the first count, are, that "Augustus," (meaning the son of J. T. Vankirk,) "caught them (meaning the said plaintiff and the said J. T. Vankirk,) "together in the packing-room, and went home and told his mother." No special damage is charged to have resulted from these words. Of themselves, unaided by *innuendo*, they import no crime or misdemeanor, and are not in my opinion actionable.

But in all the subsequent counts, the same, or equivalent words, are laid down with an *innuendo* of fornication, and the question is, whether that makes them actionable.

It is not denied, that to charge an unmarried female with fornication is actionable; but it is insisted, that the words laid must import the offence, and if they do not that, an *innuendo* cannot render them actionable. The office of an *innuendo*, in pleading, is to explain matter already expressed. It serves to explain words doubtful in their meaning, or which do not in themselves, show the slander intended to be conveyed by them, but it cannot add to, or enlarge, or change the sense of the previous words. 2 Saunders, Plead. & Ev. 799, and the cases cited.

This rule has been recognized in many cases, one of the last of which, is *Dottarer* v. *Bushey*, 4 H. 208, where it was stated by the late Judge Coulter in these words: "If the words charged in a *narr.* for slander, do not imply a criminal charge, subject

[Oatharine Evans *v.* Tibbins et uxor.]

to infamous punishment, neither an *innuendo* nor a verdict will help them.   But when the words are used in a double sense, or will bear several meanings, the plaintiff may, by an *innuendo*, aver the meaning with which he thinks they were ,spoken, and the jury is the proper tribunal to pass on the truth of the *innuendo*, and find whether the words were spoken with that meaning or not."

This seems to be a fair and reasonable explication of the rule.   An inflexible adherence to the maxim, *verba accipienda sunt in mitiore sensu*, and a persistent refusal to suffer the real meaning to be brought out under an *innuendo*, would license ingenious malice to wound with impunity, only so that it polished the shaft.   I agree with what was said by Judge Duncan, in *Walton* v. *Singleton*, 7 S. & R. 451, that "there is no offence, the imputation of which can be conveyed in so many multiplied forms and figures as that of incontinence.   The charge is seldom made, even by the most vulgar and obscure, in broad and coarse language."

The *innuendo* in this *narr.* is employed for its legitimate purpose, to explain the sense in which the words laid were spoken. They ,were capable of two constructions; the one consistent with an honorable and innocent purpose, the other highly injurious to the reputation of the plaintiff.   In the mere fact of being in the packing-room with a man, there might be nothing wrong, but the words, "caught together in the packing-room," were as capable of conveying to the minds of listeners, a charge of fornication against the plaintiff, as any form of words that could have been chosen.   The tone of voice, the emphasis, the look of the speaker, and the occasion or colloquium, would interpret the words to the hearers, and if they understood them to import fornication, shall the law insist on misunderstanding them?   Not so.   On the contrary, the law understands the words just as the hearers understood them, and how that was, is defined by the *innuendo*.   It adds nothing to them, it only indicates the sense, in which words of double import are, in this instance, to be received; and that *innuendo* thus properly used, is admitted to be true by the demurrer.   It is, as if a jury had found that to be the very meaning of the defendant's language.

In all the counts, after the first, then, a charge of fornication is laid, and that being a sufficient cause of action, the plaintiff must have judgment on the demurrer.

And now, January 7, 1856, this cause came on to be heard, on general demurrer to the plaintiff's *narr.*, and was argued by counsel for the defendants, and after consideration by the court, it is adjudged, that the second and subsequent counts of the declaration, and the matters therein contained, in manner and form as the same are stated and set forth, are sufficient in law,

for the said plaintiff to have and maintain her aforesaid action against the said defendants, and thereupon judgment is entered, on said second and subsequent counts for the plaintiff.