# Egan *v.* Dubois Printing & Publishing Company, Appellant.

*Libel—Civil action—Innuendo—Province of court and jury.*

Where words are of dubious import, the plaintiff in an action for libel may aver their meaning by innuendoes and the truth of the innuendoes is for the jury; but the quality of an alleged libel as it stands on the record either simply or explained by averments and innuendoes is purely a question of law for the court, and in civil cases it is reversible error for the court to fail to instruct the jury as to whether the publication is libelous supposing the innuendo to be true.

*Libel—Evidence—Mitigation of damages.*

In an action for libel the defendant may under a plea of not guilty prove in mitigation of damages the facts and circumstances which induced the writer to erroneously make the charge, provided such facts and circumstances do not tend to prove the truth of the charge made.

Argued Oct. 26, 1915.   Appeal, No. 221, Oct. T., 1915, by defendants, from judgment of C. P. Clearfield Co.,

116   EGAN *v.* DUBOIS P. & PUB. CO., Appellant.

Dec. T., 1911, No. 67, on verdict for plaintiff in case of Patrick Egan v. Dubois Printing and Publishing Co., Wm. J. Hines and Charles J. Bangert.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Trespass for libel.   Before HALL, P. J., specially presiding.

The publication upon which the suit was based, together with the plaintiff's averments and innuendoes was as follows:

"Former national organizers under pay of the operators." "Efforts to disrupt miners' organizers before the signing of another scale. This is not the only method the operators are pursuing to disrupt the organization of the miners. There are a number of national organizers who were in the employ of former President Lewis" (meaning thereby among others the said plaintiff) "since the change of administration these soft-handed men" (meaning thereby among others the said plaintiff) "are still with us although they are not under the pay of the miners' organization. We see them on the streets every day and they enjoy the same comforts and live the same happy contented lives they did before the last election" (meaning thereby the election for president of the "United Mine Workers of America") "none of them to the knowledge of the journal are known to be men who have means' and live without working, but they are living just the same; and the question naturally arises; what are these soft-handed individuals doing?" (meaning thereby that the said plaintiff was not then and there engaged in any manual labor and that he was supporting himself by some method not apparent to the people of the community in which he lived). "The question is easily answered. The coal companies (and later the journal may decide to name these companies)" (meaning thereby the coal companies and operators of coal mines who employ miners belonging to the organization

of the "United Mine Workers of America" and who are
interested in the question of the efficiency of the organi-
zation known as the "United Mine Workers of Ameri-
ca)" "have hired these fellows" (meaning thereby among
others the said plaintiff, late a national organizer of the
"United Mine Workers of America,") "to disrupt the
organization of the miners and they are now getting
their pay from the operators for the work they are do-
ing" (meaning thereby that he the said plaintiff among
others is in the employ of the coal companies and opera-
tors therefore for the purpose of endeavoring to disrupt
the organization of the miners, known as the "United
Mine Workers of America" in disregard of their obliga-
tion and duties to his fellow mine workers and the or-
ganization known as the "United Mine Workers of
America," and contrary to his obligations and vows as a
member of said organization) "Do you want proof of
this?   Just talk to any of them and you will be con-
vinced after a few words that they" (meaning thereby
the said plaintiff among others) "are doing everything
in their power to break up the organization" (meaning
to charge thereby that he the said plaintiff among others
is not acting in good faith towards his fellow members
of the "United Mine Workers of America" and towards
said organization but is falsely and corruptly for a price
seeking to disrupt and to destroy the organization, to
wit: the "United Mine Workers of America," to which
he belongs).

*    *    *    *    *    *    *    *    *    *    *

"Tunstall spent $607.85, miner's money in four hours
and fifteen minutes.   He should get on the pay roll of
the operators and live like a street loafer.   Tunstall may
not be a fool (we don't believe that he is) but he is act-
ing like one in this case.   For doing the same work that
he is doing some of the erstwhile national organizers"
(meaning thereby among others the said plaintiff) "and
the Courier" (meaning thereby the Dubois Morning
Courier, a daily newspaper published in the Borough of

Dubois) "are being paid by the operators," (meaning thereby that the said plaintiff among others is in the employ of persons or corporations operating coal mines and is being employed for the purpose of disrupting the organization of the coal miners known as the "United Mine Workers of America") "Tunstall should drop his pick, come to town and live with soft hands and ornament the street corners of the city under the pay of the operators. The other fellows" (meaning thereby among others the plaintiff) "are doing it" (meaning thereby that the said plaintiff among others is engaged in no lawful occupation but is being paid by corporations and others engaged in the coal mining business or attempting and working to injure and disrupt the organization known as the "United Mine Workers of America") "and they are not working so hard to break up the organization as William Tunstall is" (meaning thereby that he the said plaintiff is being paid for and is working to break up the organization of the "United Mine Workers of America"), which said false, scandalous, malicious and defamatory libel the said defendants published, circulated and caused to be published and circulated on the several days herein set forth, to the great damage, injury and detriment of the plaintiff to wit, to the sum of ten thousand ($10,000.00) dollars.

When the plaintiff was on the stand he was asked this question:

Q.—Now, Mr. Egan, there was trouble in the labor organization during the time you were in office, wasn't there?

By Mr. Pentz.—That is objected to as immaterial and incompetent.

By Mr. Cole.—We want to show he was in rebellion against this part of the labor organization here, miners' organization.

By Mr. Pentz.—The plea in this case is not guilty and it doesn't make any difference if the whole organization were in rebellion, that can't affect this question.

By the Court.—I don't know.  He can plead justification under that plea and show probable cause.

By Mr. Pentz.—That plea isn't entered here.

By Mr. Cole.—What we want to show is the general condition that surrounds the situation here.  While we don't offer it as justification nor under a plea of justification, we offer it in one view of mitigation of damages, showing the general condition that existed here as to whether it related to this man or whether it didn't relate to this man and what he was doing and so on, as being part of the res gestæ of the case, and we say it is entirely proper to offer it under a plea of not guilty.  Of course under the plea of justification, under the act of assembly, we might be required to prove every allegation that is in the article, and we are not going to attempt to do that, but we want to show the general condition that existed there at this time.

By Mr. Pentz.—It is further objected to as being too remote.

By the Court.—We will sustain the objection.  Exception noted for defendants.  (10)

By Mr. Cole.—Now we offer to show that at the time this article was written and for some time prior thereto there had been a division in the organization of the United Mine Workers; that Marks and Egan and several others had been largely in the minority and had been in rebellion against the authority of the United Mine Workers and that their efforts had been towards the disruption of that organization.  This is offered in mitigation of damages and to show a lack of malice and negligence.

By Mr. Pentz.—It is objected to as immaterial and irrelevant, for the reason that these men at the time of the publication of this article were private citizens and the witness himself stated on the stand that he did not know nor does not say on the stand that these men were engaged in the work doing what this article charges him with.

By the Court.—Objection sustained. Bill sealed for defendant. (11)

The court charged in part as follows:

["We say to you then gentlemen, as a matter of law, that if you should find that the statements contained in these several publications are defamatory and libelous, and such as to hold the parties against whom they are directed up to public hatred and contempt they are not privileged communications and the publishers of them would be liable to respond in damages for whatever actual damages they have caused to the character of the parties referred to.] (3)

["We say to you therefore, if you are of the opinion from the evidence produced in this case that the descriptions in these articles were such, either intentionally or by want of due diligence in ascertaining the facts as to point to these plaintiffs, and to suggest by natural and reasonable inferences to the public that they were the parties referred to, and you find in addition to that that these articles are libelous and defamatory and such as to hold these plaintiffs up to public contempt, then the defendants would be liable.] (4)

["If you find that these articles are such as claimed by the plaintiffs, that the plaintiffs were so described that the public naturally and reasonably thought they were referred to, and you find that the charges made against them in these articles were of such character as to hold them up to public hatred and contempt, then it will be your duty to find a verdict for the plaintiff in such sum as you may deem proper, in accordance with the act of assembly; provided, these statements were so recklessly and wantonly made and with such a disregard of the plaintiff's rights as to constitute legal malice."] (5)

Verdict and judgment for plaintiff for $1,000. Defendants appealed.

*Errors assigned*, among others, were (3, 4, 5) above

instructions quoting them and (10, 11) rulings on evidence quoting the bill of exceptions.

*A. L. Cole,* with him *H. B. Hartswick* and *L. E. Boyer,* for appellants.—The charge was insufficient: Meas v. Johnson, 185 Pa. 12; Collins v. Despatch Publishing Co., 152 Pa. 187; Pittock v. O'Neill, 63 Pa. 253; Price v. Conway, 134 Pa. 340; Leitz v. Hohman, 16 Pa. Superior Ct. 276.

The offer of evidence in mitigation of damages should have been allowed: Bruce v. Reed, 104 Pa. 408; Minesinger v. Kerr, 9 Pa. 312; Moyer v. Moyer, 49 Pa. 210.

*W. C. Pentz,* with him *John J. Pentz,* for appellee, cited: Mengel v. Reading Eagle Co., 241 Pa. 367; Price v. Conway, 134 Pa. 340; Dottarer v. Bushey, 16 Pa. 204; Pease v. Shippen, 80 Pa. 513; Fitzgerald v. Stewart, 53 Pa. 343; Lukehart v. Byerly, 53 Pa. 418; Stepp v. Croft, 18 Pa. Superior Ct. 101.

OPINION BY HENDERSON, J., July 18, 1916:

The plaintiff's action is based on two articles published by the defendants in a newspaper conducted by them which are alleged to be libelous. The plaintiff is not named in either of the articles but it is asserted in the declaration that the statement that certain unnamed persons had been employed by operators of coal mines for the purpose of endeavoring to disrupt the organization of miners known as the "United Mine Workers of America" contrary to their obligations and vows as members of that organization referred to him and was maliciously defamatory. The defendants while admitting the publishing contended that the articles were not libelous and asked the court to charge the jury to that effect. The learned trial judge refused this request and submitted the case to the jury to find whether the statements contained in the publications were defamatory and libelous and whether they referred to the plaintiff. The

instructions quoted in the third, fourth and fifth assignments in different terms direct the jury to pass on these two questions. It is charged by averments and innuendoes that the plaintiff is one of the individuals to whom the article applies and that the statements are libelous in view of the plaintiff's former and present relation to the "United Mine Workers of America." Whether the descriptions of the persons referred to in the articles applied to the plaintiff was a question of fact properly submitted to the jury. If words are reasonably susceptible of a defamatory meaning as well as an innocent one the former meaning may be ascribed to them by an innuendo and the jury is then to decide whether such meaning is properly ascribed to them. The quality of an alleged libel, however, either as it is published or as explained by averments and innuendoes is purely a question of law for the court and in civil cases the court is bound to instruct the jury whether the publication is libelous or not supposing the innuendoes to be true. The distinction between civil and criminal cases is discussed in Pittock v. O'Neill, 63 Pa. 253, and it was there held that "in civil cases the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true." The same view is expressed in Collins v. Despatch Publishing Company, 152 Pa. 187, in the following form: "Where words are of dubious import the plaintiff may aver their meaning by innuendoes and the truth of the innuendoes is for the jury, but the quality of an alleged libel as it stands on the record either simply or explained by averments and innuendoes is purely a question of law for the court; and in civil cases the court is bound to instruct the jury as to whether the publication is libelous supposing the innuendoes to be true." The same principle is reaffirmed in Meas v. Johnson, 185 Pa. 12, and is repeated in Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432. The learned trial judge omitted to give instruction on this subject but directed the jury to determine whether the publications were libelous or

not.    The defendants were entitled to the judgment of the court on the inquiry whether the articles were actionable assuming the innuendoes to be true.    The fourth and fifth assignments are, therefore, sustained.

An attempt was made by the defendants to introduce evidence showing the circumstances which induced them to publish the articles complained of in mitigation of damages as set forth in the 9th, 10th, 11th and 13th assignments of error.    It is unnecessary to discuss each of these as the case goes back for another trial.    The offers were somewhat vague and indefinite in form and for that reason the court should not be criticised for overruling the offers.    It is proper to say, however, that under the plea of not guilty the defendants may prove in mitigation of damages the facts and circumstances which induced the writer to erroneously make the charge provided such facts and circumstances do not tend to prove the truth of the charge made.    The motives of the accuser and the presence or absence of causeless malice may fairly be considered by the jury.    It was said in Minesinger v. Kerr, 9 Pa. 312, that it may be safely asserted that facts which contribute even in a slight degree to show an innocent reason for the defendant's act and which do not at the same time tend to support a plea of justification, are receivable in mitigation of damages. And in Bruce v. Reed, 104 Pa. 408, the court said: "Under their plea of not guilty the defendant may prove in mitigation of damages the facts and circumstances which induced the writer to erroneously make the charge, provided such facts and circumstances do not tend to prove the truth of the charge made."    The reason for the application of this rule is obvious.    The imputation of recklessness or wantonness may thereby be repelled.    This would not excuse the publication but it might throw light on the degree to which the defendants' acts would be held to be reprehensible.

The judgment is reversed with a venire facias de novo.