Commonwealth *v.* Miele, Appellant.

Argued May 7, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*John E. Evans,* and with him *Harry A. Mackey,
Adrian Bonnelly* and *Ralph J. Rinalducci,* for appellant.

*Earl Jay Gratz,* Assistant District Attorney, and with him *Charley F. Kelley,* District Attorney, for appellee.

OPINION BY JAMES, J., December 17, 1934:

The appellant, who was secretary of the Thirty-fourth Ward Italian American Building and Loan Association, was convicted on six of the twelve indictments found against him and those six indictments all charged him with embezzlement as an officer of the corporation, and embezzlement, abstraction and wilful misapplication as secretary of the funds of said building and loan association; and all of the six indictments on which he was acquitted charged him with the same offenses. In addition, bill No. 322 on which he was convicted, charged him with fraudulent conversion.

These indictments were founded upon the Act of June 12, 1878, P. L. 196, 18 PS §2511, which covers embezzlement by an officer of a corporation; the Act of May 18, 1917, P. L. 241, 18 PS §2486, which covers conversion by a person having possession of another's property; and the Act of April 16, 1929, P. L. 524, 18 PS §2516, which covers embezzlement by an officer ...... of a building and loan association.

The trial lasted four days, and at the conclusion of

the court's charge, the following colloquy between the trial judge and defendant's counsel took place: "The Court: Is there anything else before I rule on the points? Mr. Bonnelly: No sir, everything is thoroughly covered. The Court: How about your points? Mr. Bonnelly: I think your Honor has covered every one of the points. We withdraw those." This colloquy took place about 3 P. M., just before the jury retired, and no exception was taken to the charge of the court. The jury did not return with the verdict until the following morning and after the verdict had been rendered and the jury discharged, counsel asked leave to take certain exceptions to the charge, nunc pro tunc, which was allowed, none of which were seriously pressed at the argument for a new trial, but which are very earnestly urged on this appeal.

Counsel for defendant first asked for an exception, "to that part of your Honor's charge to the jury which had reference to the fact that building and loan associations cannot lend money except on credit; they are not banks," and his second request to, "that part of your Honor's charge, which had reference to 'He had no right to lend more than the book value.'"

We shall discuss the questions raised by appellant, not as separate assignments of error, but as they are summarized in appellant's brief.

Appellant contends that the Acts of 1878, 1917 and 1929 are not all the same offense and hence one guilty of one offense is not necessarily guilty under all of those statutes. As an academic statement, appellant's contention is correct, but as applied to the facts in the present case, the defendant if guilty could be convicted under all the indictments. He was an officer of a corporation under the Act of 1878; and officer of a building and loan association under the Act of 1929; and a person as designated under the Act of 1917. It is immaterial in what capacity the defendant was

charged, the gravamen of the offense was the unlawful conversion: Com. v. Wooden, 94 Pa. Superior Ct. 452. In his charge the court had detailed a history of the several acts of assembly relating to embezzlement and fraudulent conversion, and compared the offense as defined by the Act of 1878 which provides: "If any officer of any corporation shall fraudulently take, convert or apply to his own use any of the money of such corporation, he shall be guilty of a misdemeanor," with the Act of 1917 which provides: "Any person having possession of any money of or belonging to any other person, firm or corporation, who fraudulently withholds, converts or applies the same to and for his own use shall be guilty of a misdemeanor," and with the Act of 1929 which provides: "Any secretary of any building and loan association, who shall embezzle, abstract or wilfully misapply any of the moneys, funds or credits of such institution with intent to injure or defraud such institution or who shall for the benefit of himself draw any order, check or bill of exchange with intent to defraud such institution, shall be guilty of a misdemeanor," and stated, "Now I have told you what the law is, but we are not interested in fine distinctions in this case, if he has committed one of those crimes, he has committed all of them and you need not worry about the distinction." In this we see no error, particularly when taken in connection with a latter portion of the charge which is as follows: "In every one of these cases as I have stated at the beginning, I am just about at the end now, for conviction three things are necessary, it must be the money of the association that was taken, it must have been converted to his own use, that is he must have used it, and it must have been done with an intent to defraud. If anyone of the three is lacking, your verdict is not guilty; if all three are present in any case, your verdict is guilty."

In defining the nature of the offenses charged and the proof necessary, we find no ground for complaint, and although the illustration used by the court, complained of under Paragraph C of appellant's argument, may more properly have been designated as fraudulent conversion than embezzlement, we are not convinced that the jury was in any manner misled thereby.

The exceptions which were allowed by the court after the rendition of the verdict, hereinbefore mentioned, had reference to the following portions of the court's charge:

"Now, building and loan associations cannot lend money except as prescribed by law. They are not banks. They are not permitted to lend money without security. They can lend money only on security. One of the forms of security on which they are permitted to lend is real estate in the form of mortgages. We are not particularly interested in that in this case. Another form of loan they are permitted to make, in which we are very much interested, is what are termed stock loans. A stockholder has, we will say, five shares of stock in a building and loan association. If he pays in one year he has paid in $60. If he pays in five years he has paid in $300. That is on the basis of a five share book. He has paid in $300, and he has a right under the law to borrow on that stock and give that stock as security. That is perfectly legal. But he has no right to borrow, and the association has no right to lend more than the book value of the stock at the time of the loan, because to do so would be to lend without security, and that a building and loan association is not permitted to do ...... You will recall what I said to you a moment or two ago about stock loans. This defendant had a perfect right to borrow money in the form of a stock loan on his own stock, or other stock, if properly authorized. But he

could only borrow up to the book value of that book. Beyond that it was illegal.'' These extracts must be read in connection with the following portions of the court's charge: ''Did he get it properly? If he got it properly as a stock loan he is not guilty. If he got it mistakenly, believing he had a right to it, he is not guilty. But if he got it by deliberately deceiving, jockeyed these accounts to deceive, for his own use, he is guilty ...... The same test applies here as I went over in the case of bill 317. He is not guilty if he acted honestly throughout; he is not guilty if he defrauded Lembo; he is guilty only if he defrauded the building and loan association.''

In charging the jury as to the stock loans the court had in mind the provisions of Section 37, cl. 1 of the Act of April 29, 1874, P. L. 73, 15 PS §921 which provides as follows: ''Building and loan associations incorporated under the provisions of this act shall have the powers, ...... be governed, managed and controlled as follows: Clause 1. They shall have the power and franchise of loaning or advancing to the stockholders thereof the moneys accumulated from time to time and the power and right to secure the repayment of such moneys and the performance of the other conditions upon which the loans are to be made by bond and mortgage as well as other security ......'' Under this section it clearly would be illegal for an officer of such association to borrow more than the book value or moneys accumulated upon said stock, and if it was done with a fraudulent intent, he would be guilty under the indictments. As the court well stated, the mere honest borrowing of the money, believing he had a right to do so, was not a criminal act, unless it was accompanied by an intent to unlawfully convert and misapply the association's funds.

Bills Nos. 315, 318, 319 and 324 involved transactions in which defendant drew checks of the building

association to his own order or to the order of a person from whom he contended he had a full power of attorney and presented these checks to the other officers of the building association for signature, personally entered these checks on the books of the association, the borrowing capacity of which had previously been exhausted, and in one instance as a stock loan on a book which he did not own. The testimony on these several bills was in substance as follows: As to bill No. 315, on June 15, 1929, check No. 1682 was issued as a stock loan to Joseph Lembo in the sum of $300; Lembo's name and defendant's name were endorsed on the back by the defendant and he got the money; defendant contended that by virtue of a power of attorney executed in 1926, he was authorized to make the loan in question. Bill No. 318 relates to a transaction involving Book A-61 in the name of Nicholas Di Noto for five double shares, which was assigned to defendant on January 28, 1930. Commonwealth contended that on September 17, 1929, defendant made a stock loan on this book for $700 and on November 7, 1930, made another stock loan for $700, while the book value of the stock was $400. Defendant claims that Book A-61 had nothing to do with the check of September 17, 1929 and that of the loan of November 7, 1930, $400, was to be used against A-61 and $300 against some other book, but what book he was unable to state.

Bill No. 319 relates to the issuance of a check for $300 as a stock loan. The cash book showed the loan to be made on book No. 351 owned by Sam Croce, while the check showed books Nos. 4 and 5, which at the time the loan was made had a book value of $1,516, and they already had loans aggregating $1,600.

Bill No. 324 relates to the issuance of a check dated April 9, 1929, in the sum of $500 upon book No. 80, in the name of Joseph Lembo. Defendant admitted that

it was a personal stock loan of his, that book No. 80 was a mistake and he did not know what books are involved.

We have not attempted to give in detail all of the testimony relating to these indictments, but taken in connection with other indictments upon which defendant was acquitted, the testimony fully warranted the jury in finding, not that defendant had overborrowed money on the stocks, but that defendant had fraudulently converted the money of the association to his own use.

Under bill No. 322 defendant was charged with the embezzlement of $3,093.33, moneys received from Carmelo Nicolella. Whether this amount had been received by defendant as secretary of the association as purchase money for premises owned by the association, later conveyed to Carmelo Nicolella, or this money had been borrowed by the defendant from Nicolella, was a question of fact and the jury was fully warranted in finding him guilty as charged. Under bill No. 323, the testimony, if believed, established that defendant had converted the sum of $150 that had been paid to him by Anthony Dinella to be placed to his credit on a stock loan which he had made.

It is further objected under assignments relating to the admission of evidence that certain leading questions were asked by counsel for Commonwealth of the witness Anthony Dinella. As has been said on many occasions, the scope and use of leading questions must be largely entrusted to the discretion of the trial judges, and we find no reversible error in the action of the trial judge here. Under assignment of error No. XXIV, complaint is made that a witness for the Commonwealth was asked, "Was book 221 held by your wife ever assigned to you?" and the question was objected to on the ground that it was immaterial. Conceding that it was immaterial, we cannot see how

defendant was in way prejudiced thereby. Assignment of error XXV, relates to the action of the trial judge in sustaining an objection to a question by defendant's counsel. The question involved the acceptance by the witness as true, of certain statements made by counsel, as to what the records of the courts would show. The answer of the witness would necessarily have to be predicated on the correctness of the facts, as contained in the question, which clearly rendered it improper in that form.

Further complaint is made to the following language of the court's charge: "Many and many a man has taken money from a building and loan association, or bank or private individual fully intending and expecting to repay and being unable to pay it, he has been caught. His intention to repay does not save him." Appellant's complaint is based on his contention that the acts of the defendant were loans and that his intention to repay was but an indication that the act was not criminal. However, that loses sight of the fact that the question for the jury to determine was whether under the testimony, the acts of the defendant were honest loans or unlawful conversions of the association's money, and if the latter, his intention to repay clearly does not save him.

We have given careful attention to the able and elaborate argument, presented by appellant, but are not convinced that any reversible error was committed by the lower court.

The assignments of error are overruled and the several judgments are affirmed, and it is ordered that the defendant appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences or any part thereof which he had not performed at the time this appeal was made a supersedeas.