Stompler *v.* Richman, Appellant.

Argued October 15, 1936.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*W. Horace Hepburn, Jr.,* for appellant.

*William T. Connor,* with him *John R. K. Scott,* for appellee.

OPINION BY JAMES, J., January 29, 1937:

Plaintiff brought her action of trespass in slander and the jury rendered a verdict in her favor in the sum of $1,500. Defendant's motions for a new trial and judgment n. o. v. were refused and from the judgment entered, he has taken this appeal.

Plaintiff's statement averred as follows: " 'That man was a friend of yours, he was a boy friend of yours and you invited him up into your apartment and when

he left he took the bracelet. You have men coming to see you and that was one of your boy friends,' meaning thereby to convey and suggest that the plaintiff was of immoral and lewd habits and lived a life of prostitution, and was guilty of fornication."

On January 6, 1930, plaintiff, a widow, aged 45, was robbed of some jewelry among which was a gold bracelet. On February 14, 1934, accompanied by city detective Tagg, she visited the pawn shop of defendant. She was shown two bracelets, upon which eight dollars had been advanced by defendant, one of which she identified belonged to her. She was advised by the detective and defendant to leave the bracelet in the possession of defendant, so that in case the man who pledged the jewelry came back to redeem it, she would be able to obtain some of the other jewelry that had been stolen. Several months later, she again visited defendant and asked for the bracelet, and he demanded five dollars from her, as the amount of the pledge which would be due on her bracelet. She reported to the station house and returned, accompanied by Tagg, and again demanded the bracelet. At this meeting, she testified that defendant said "he had a long talk with Mr. Bodkin, and 'Mr. Bodkin knows what this woman is.' He said: 'Mr. Bodkin knows what this woman is.' I said: 'What do you mean?' He said: 'Why, this man was a friend of hers. He was a boy friend of hers. She invited him up into her apartment, and when he left he took the bracelet.' He says: 'This man was coming to see her, and he was one of her boy friends,' and he shook his finger at me when he said it." Plaintiff protested that as she had reported the robbery before the bracelet was pledged, it should be returned to her. Defendant refused to turn over the bracelet until the detective found the notice which defendant had received from the police department. Upon her return with the notice to defendant, he turned over the bracelet to her. Her testimony

was supported by the detective who accompanied her to defendant's place of business.

Defendant denied he used the language above testified to, and asserted that when he had described the person who had pledged the jewelry, plaintiff had said he was a friend of the family. She later returned and he stated to her that he would not turn the bracelet over until she instituted prosecution against the thief; that as the man who had pledged the bracelet was a friend of the family, she was better able to locate him. He further asserted a quarrel arose, during which the plaintiff used abusive language against him. Defendant's son testified his father did not use the language charged to him. Plaintiff and the detective, when called for rebuttal, denied plaintiff had used any vile language, and said that the defendant's son was not present at the interview.

The first assignment alleges that the court below erred in permitting the attorney for plaintiff to ask an improper leading question. On direct-examination, Tagg was asked, "Q. What did he say about her boy friends going upstairs?" An objection was overruled and the witness replied, "He said that they went there, and probably when he left, he took the bracelet." This question was asked shortly after the witness had testified as to the conversation that had taken place between plaintiff and defendant. Whether a leading question may be permitted is largely a matter of discretion with the trial court, and cannot be reviewed in the absence of a clear abuse thereof: *Com. v. Bruno,* 316 Pa. 394, 175 A. 518; *Com. v. Miele,* 115 Pa. Superior Ct. 269, 175 A. 706. In allowing this question, we find no such abuse as would warrant a reversal.

Appellant's second assignment of error is directed to the refusal of his motion to withdraw a juror and continue the case, because of an improper argument made by plaintiff's counsel during his closing address. The

record does not show the exact language used, but simply what may be regarded as a resume of the report made by the detective Tagg, which contained the language alleged to have been used by defendant, may have been read by others. In overruling the motion the trial judge said: "I will overrule your motion. It is entirely legitimate to argue that such a slander, when once started, goes farther. That is the substance of his argument." Appellant has not followed the proper practice which was outlined in *Faust v. Cotner,* 105 Pa. Superior Ct. 177, 160 A. 155 and *Com. v. Wilcox,* 112 Pa. Superior Ct. 240, 170 A. 455. But aside from that, we are faced with a statement by the court, and undenied, that the argument used was a legitimate inference that could be drawn from the utterance of the remarks. As thus presented, this assignment cannot be sustained.

Appellant argues that the court erred in refusing his point for binding instructions and his motion for judgment n. o. v., because the statement of claim failed to set out the particular circumstances which would give his words a derogatory meaning, and that the testimony was insufficient. In the course of its charge, the court below said: "We know that people sometimes speak of their friends as 'boy friends' without always meaning that they have had illicit relations with them. A young girl who is engaged, often speaks of her boy friend. There is nothing improper in that, and there is no offensive insinuation. At the same time, the manner in which such language is used, the way it is said, and all the circumstances, must be taken into consideration in determining whether or not it fairly amounts to a criminal charge. You know what the situation was there at this pawn-shop. The plaintiff tried to get back her bracelet, and whether she had said to the defendant, when he described the person who pawned it, that he was a friend of the family makes very little difference. The point is, did the defendant utter those words,

and what did they mean, when he, shaking his finger at her, said: 'He is one of your boy friends; he came to your apartment, and when he left he stole the jewelry from you. You have men coming up to your apartment, and he is one of your boy friends.' Just what did the defendant mean by that, and what would the average person take those words to mean when said in that way, and in that connection? That is for you to say. If you believe those words were uttered and that the fair interpretation of those words was a charge that this lady was a loose woman who entertained men promiscuously with her sexual favors, and that the man who pawned the bracelet was a paramour, so to speak, of hers, that would be a slanderous statement; and, it being a charge of crime, the law presumes it to be false; but does not require the person against whom the charge is made to prove the falsity of it. The law presumes it to be false because, in itself, it contains the imputation of immorality and crime; and if the defendant takes the position that the charge is not true, the law presumes such a charge to be false." The court further stated, "If she is of a marriageable age, it tends to destroy her marrying possibilities, for who would have a loose prostitute?"

If words are reasonably susceptible of a defamatory meaning as well as an innocent one, the plaintiff may by an innuendo ascribe the former meaning to them, and it will be for the jury to decide whether such meaning is truly ascribed to them; but the quality of an alleged slander or libel, as it stands upon the record, either simply or as explained by averments and innuendo, is purely a question of law for the court, and in civil cases the court is bound to instruct the jury as to whether the publication is slanderous or libelous, supposing the innuendoes to be true: *Goebeler v. Wilhelm*, 17 Pa. Superior Ct. 432; *Egan v. Dubois, P. & Pub. Co.*, 64 Pa. Superior Ct. 115, 122; *Stoner v. Eris-*

*man,* 206 Pa. 600, 56 A. 77; *Pfeifly v. Henry,* 269 Pa. 533, 112 A. 768.

The language charged to the defendant was reasonably susceptible of a defamatory meaning and the trial judge was correct in allowing the jury to decide whether the words were intended to charge the plaintiff with immoral relations. Our courts have held in the following cases that the language used, coupled with an innuendo, was a sufficient averment and proof of an alleged defamatory remark: "For to call a woman a wanton, and to say she went gadding about with young men to night meetings; that they were watching by the way for her": *Harker v. Orr,* 10 Watts 245. "Augustus caught them together in the packingroom and went home and told his mother": *Evans v. Tibbens,* 2 Grant 451. "She is a bad character, a loose character": *Vanderlip v. Roe,* 23 Pa. 82. "Damned bitch": *Stoner v. Erisman,* supra. "Does not weigh correctly, he had shown me how to fix the scales when he went away": *Pfeifly v. Henry,* supra. As the language averred, coupled with the innuendo, contains a charge of immorality the colloquium was unnecessary. The evidence fully warranted the jury in finding that the language used by the defendant was reasonably susceptible of the interpretation averred in the declaration.

Appellant further complains as to the court's charge in that the language used could be construed as a charge that the plaintiff entertained men promiscuously with her sexual favors. The language charged to appellant is not confined to a single boy friend, who is alleged to have taken the bracelet, but states that he "was one of your boy friends." If in the use of the term "boy friend" the jury was justified in finding that a boy friend was a paramour, it necessarily follows that if she had other boy friends, she was entertaining other men promiscuously with her sexual favors. We believe the court was fully justified in so charging. Nor is the lan-

guage which refers to the marrying possibilities of plaintiff unjustified. If plaintiff was entertaining men promiscuously, it surely cannot be argued that it would not seriously affect her.

Under assignment of error nine, appellant complains that the verdict is excessive. This point does not seem to have been raised upon the argument for a new trial. The court below in its opinion stated: "The verdict was fully supported by the evidence, and assessed proper damages for a wanton and unjustified slander, the product of anger and resentment at the refusal of the plaintiff to pay the defendant pawnbroker the pledge price of property which had been stolen from her, and which he had taken in pawn." It is only in clear cases that this court is justified in correcting a verdict on the ground of excessiveness. It has frequently been decided that the question of the amount of a verdict will be reviewed only in cases where the verdict is so grossly excessive as to shock the appellate court's sense of justice, and where the impropriety of allowing the verdict to stand is so manifest as to show a clear abuse of discretion on the part of the court below in refusing to set it aside: *Baymond v. Sternberger*, 116 Pa. Superior Ct. 451, 456, 176 A. 787. Viewed in the light of these principles, we are not convinced that the verdict was so grossly excessive as to warrant us in setting it aside.

The assignments of error are overruled and the judgment is affirmed.